IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CASSIE MILLER, obo B.C.M., ) | CASE NO. 5:13 CV 2040 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | WILLIAM H. BAUGHMAN, JR. |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | **MEMORANDUM OPINION AND** |
| ) | **ORDER** |
| Defendant. ) | |

## Introduction

**A.    Nature of the case and proceedings**

Before me[1] is an action by Cassie Miller, on behalf of B.C.M., a school-aged child, under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] The

---

[1] ECF # 20. This case was reassigned by Chief Judge Solomon Oliver, Jr. to me from Magistrate Judge Kenneth S. McHargh on April 10, 2014. On April 11, 2014, the parties consented to my exercise of jurisdiction. ECF # 22.

[2] ECF # 1.

[3] ECF # 13.

[4] ECF # 14.

parties have briefed their positions,[5] and counsel have participated in a telephonic oral argument.[6]

**B.     Background facts and decision of the Administrative Law Judge ("ALJ")**

B.C.M., whose application for benefits was filed by his mother, Cassie Miller,[7] was born on March 17, 2003, and so was nine years old at the time of the hearing in 2012.[8]

The ALJ, whose decision became the final decision of the Commissioner, found that B.C.M. had the following severe impairments: attention deficit hyperactivity disorder (ADHD), learning disorder, and speech disorder.[9]

The ALJ then determined that B.C.M. did not have an impairment or combination of impairments that met or equaled a listing.[10] In that regard, the ALJ found that B.C.M. had no limitations in the domains of the ability to care for himself and in health and physical well-being; less than marked limitations in the domains of acquiring and using information, attending and completing tasks, and moving about and manipulating objects; and marked limitations in the domain of interacting and relating with others.[11]

---

[5] ECF # 17 (Miller's brief); ECF # 18 (Commissioner's brief); ECF # 19 (Miller's reply brief).

[6] ECF # 25.

[7] Transcript ("Tr.") at 12.

[8] *Id*. at 12,15.

[9] *Id*. at 15.

[10] *Id*.

[11] *Id*. at 18-24.

The ALJ, in part, relied in making these determinations on an October 21, 2010, opinion of state reviewing consultant Malika Haque, M.D., to which the ALJ ascribed "significant weight;" a December 17, 2010, opinion of John Mormol, M.D., also a state reviewing consultant, to which the ALJ gave "great weight;" and a January 20, 2011, opinion from Cecil Desal, M.D., the claimant's pediatrician, which was given "considerable weight" by the ALJ because "Dr. Desal has a longitudinal view of the claimant's symptoms and impairments."[12]

In addition, the ALJ noted the testimony of the claimant's mother, but gave that testimony no specific weight.[13] Rather, the ALJ observed that "none of [B.C.M.'s behaviors alleged by Miller] are evidenced at school," and Miller referred to B.C.M. as "'a normal kid' or 'an active kid.'"[14]

The ALJ ultimately concluded that because B.C.M. did not have an impairment or combination of impairments that resulted in "extreme" limitations in one domain of functioning or "marked" limitations in two domains, he was not disabled.[15]

---

[12] *Id*. at 18.

[13] *Id*.

[14] *Id*.

[15] *Id*. at 24.

**C.     Issues on judicial review and decision**

Miller now asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Miller presents the following issues for judicial review:

- The ALJ found that B.C.M. had less than marked limitations in attending and completing tasks. Does this finding have the support of substantial evidence?

- The ALJ found that B.C.M. had a less than marked limitation in acquiring and using information. Does this finding have the support of substantial evidence?

Further, Miller raises two issues subsidiary to the primary issues stated above:

- The ALJ gave great weight to the opinion of the state agency reviewing physician. Subsequent to that opinion, counsel for B.C.M. supplemented the transcript with additional school and medical records. Did the ALJ err in assigning weight to the reviewing physician's opinion in light of the content of these later records?

- The ALJ found that statements regarding B.C.M.'s impairments and limitations not credible to the extent inconsistent with the step three domain findings. Does this finding properly discount the credibility of B.C.M.'s mother's testimony?

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence in part and, therefore, must be affirmed in part. But I also will find that the findings are not supported by substantial evidence in other parts, and so, to that extent, must be reversed and the matter remanded for a limited purpose.

## Analysis

**A.     Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[16]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[17] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[18]

---

[16] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[17] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[18] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**B.   Application of standard**

Miller's challenges come against the backdrop of a finding of a marked limitation in only the single domain of interacting and relating to others.[19] A finding of marked in either of the two challenged domains would require a finding of disability, entitling B.C.M. to benefits.

As to each of the six domains at issue, the ALJ provided a unified statement of reasons in support of the finding.[20] As noted, these statements have the support of the opinions of two state agency reviewing psychologists ("SARPs"), who rated B.C.M. less than marked in these domains.[21] The ALJ gave these opinions significant and great weight.[22] The SARPs are the only acceptable medical sources that opined as to specific limitations in domains. As discussed below, Miller attacks the ALJ's reliance on these opinions in an effort to undermine the domain findings.

Although there is evidence going both ways, the evidence specifically identified by the ALJ in the unified statements, coupled with the opinions of the SARPs, appears to provide substantial evidence in support of the challenged domain findings through at least

---

[19] Tr. at 21.

[20] *Id.* at 19 (acquiring and using information), 21 (attending and completing tasks).

[21] *Id.* at 560, 566.

[22] *Id.* at 18.

the date of the last SARP opinion, December 17, 2010. Counsel for Miller conceded as much at the oral argument.

Miller argues, however, that these opinions cannot have great or substantial weight after the dates issued because the record contains relevant medical and school records generated after those dates showing a greater degree of limitation in domains at issue. In other words, Miller argues that the ALJ committed error by not discounting those opinions in light of this later evidence.

As explained below, the records that bear on B.C.M.'s limitations that post-date the SARPs' opinions are primarily school records rather than medical records. But as I ruled in *Matos v. Commissioner of Social Security*,[23] school records and the evaluations and observations of teachers and counselors had to be properly considered in determining the level of limitation in the various domains.[24]

From my review of the ALJ's decision, she includes several isolated citations to these later records.[25] Although this shows that the ALJ did review these records to some extent, I have some concerns, more fully articulated below, that the ALJ did not evaluate them in terms of the longitudinal view of B.C.M. as he progressed through several grades of elementary school. Had she done so, the ALJ may well have determined that another

---

[23] *Matos v. Comm'r of Soc. Sec.*, 320 F. Supp. 2d 613 (N.D. Ohio 2004).

[24] *Id.* at 616.

[25] *See*, Tr. at 17.

professional evaluation was warranted, especially with respect to the attention and concentration domain.

Miller identifies the records that post-date the SARPs' opinions on page 20 of her brief.[26] They are the following:

- The IEP for the period from March 2011 to March 2012.[27] During this time B.C.M. was in second and third grade. This IEP seems to focus on skills relevant to the acquiring and using information domain. The report is dated March 3, 2011, and documents progress in all areas covered by the IEP. There is one reference to B.C.M.'s "inability to slow his 'body engine'" as accounting for "messy" writing at times.[28] Otherwise, I saw nothing significant relating to the attention and completing tasks domain. It is not probable that this IEP would have resulted in a assessment different from that made by the SARPs and adopted by the ALJ in her findings.

- The IEP for the period from May 6, 2010 to May 5, 2011.[29] This IEP is dated May 5, 2010, and was probably among the records reviewed by the SARPs. This IEP covers the end of B.C.M.'s first grade year and most of his second grade year. It provides a baseline picture of B.C.M.'s limitations as of the time frame in which the SARPs formulated their evaluations and opinions. Again, in the acquiring and using limitations domains, I saw nothing inconsistent with the finding of less than marked limitation. There is a reference to B.C.M. "struggling with task behavior" when writing.[30] Measures to control and direct his attention to task are discussed.

---

[26] ECF # 17 at 20.

[27] Tr. at 189-204.

[28] *Id.* at 196.

[29] *Id.* at 205-219.

[30] *Id.* at 211.

- B.C.M.'s report card dated November 3, 2011 (third grade) and teacher questionnaire dated November 28, 2011.[31] B.C.M. received grades ranging from A- to C-. The teacher included on the report card a hand written note that B.C.M. was having trouble focusing. The questionnaire includes ratings corresponding to the domains. For the acquiring and using information domains, the teacher in four areas rates B.C.M. as having "a serious problem" and in one area "a very serious problem."[32] In a hand written narrative, the teacher states that B.C.M. "requires frequent prompting to remain on task."[33] In the attending and completing tasks domain, the teacher rates B.C.M. as having a serious problem in three areas and a very serious problem in six areas.[34] In the handwritten narrative she observes that B.C.M. "can't stay in one area on one given task for more than 5 minutes without prompting to be on task."[35] Taken at face value, this questionnaire documents a serious problem with attention and completing of tasks that adversely impacts B.C.M.'s acquiring and using information. Although B.C.M. appears to have adequate skills for his age to acquire and use information, his ADHD causes attention problems that hinder him from effectively using those skills.

- Miller and B.C.M.'s teacher, Mrs. Sampson, traded handwritten notes in December of 2011 about B.C.M.'s attention problems.[36] Miller reported problems in completing home work, and Mrs. Sampson explained that he had so much home work because he did not finish assignments at school. Mrs. Sampson observed that "[h]e is off-task a great deal and wants to talk to me and get out of his seat. His focus is a serious problem. It prevents him from learning at his potential."[37] This reinforces the impressions from the IEPs that B.C.M. had adequate

---

[31] *Id.* at 313-22.

[32] *Id.* at 316.

[33] *Id.* (underlining in the original).

[34] *Id.* at 317.

[35] *Id.*

[36] *Id.* at 334-35.

[37] *Id.* at 334.

skills to acquire and use information but could not apply them because of attention deficits. Miller told Mrs. Sampson that the pediatrician had suggested medication, but she did not want to do that.[38]

- The IEP for the period from March 1, 2012 to February 28, 2013.[39] It is dated February 29, 2012. This covers the last part of B.C.M.'s third grade year and most of the fourth grade. Again there is reference to struggling greatly with maintaining focus and staying on task.[40] The evaluation shows that B.C.M. had made some progress in the skills related to acquiring and using information but had experienced some setbacks as well.

- B.C.M.'s report card dated March 29, 2012.[41] The grades ranged from A to C-. Mrs. Sampson made the handwritten notation "[h]is lack of focus affects his organization and performance so very much."

- The IEP for the period from February 20, 2013 to February 2014, dated February 19, 2013.[42] This post-dates the ALJ's decision of June 15, 2012. This was first introduced on appeal of the ALJ's decision to the Appeals Council.[43] The AC denied the request for review.[44] Here Miller does not request remand to consider new and material evidence. This record cannot be considered.

- Records from Greentree Counseling Center.[45] These records make reference to problems with impulse control, focus, attention, and conduct. There is a tone here that B.C.M. has begun to react to his

---

[38] *Id.* at 335.

[39] *Id.* at 339-57.

[40] *Id.* at 342.

[41] *Id.* at 432.

[42] *Id.* at 449-64.

[43] *Id.* at 4.

[44] *Id.* at 1.

[45] *Id.* at 596, 635-38.

problems with some anger and refusal to comply. This is really the first suggestion that his attention and focus problems are affecting his discipline. There is reference to anxiety and depression.[46] These notes cover a period from May through September of 2011. One of his counselors at Greentree, William Boxler, wrote a letter "to whom it may concern," apparently in support of the CSSI application.[47] It bears the date February 20, 2012. In it he documents the treatment that B.C.M. has received and observes that with therapy B.C.M. has made some progress. He states the B.C.M.'s "biggest issues are his ability to follow directions and his ability to stay on task." Although the Greentree records support that a problem exists, particularly in the "attention and completion of tasks" domain, I can see nothing in those records that would provide a basis for assessing the extent of the limitation in that domain.

In sum, the records not available to the SARPs do provide relevant information for purposes of assessing the degree of limitation in the attention and completion of tasks domain. In particular, the information in the IEP assessments and in the teacher's questionnaire may well have prompted the SARPs to have rated the degree of limitation in that domain more severe after December of 2010. It does not appear that the ALJ focused on these records in making her decision.

Therefore, the Commissioner's decision for the period from the date of the application through the date of the latest SARP opinion, December 17, 2010,[48] is affirmed as supported by substantial evidence. However, the case is remanded for reconsideration of the finding as

---

[46] *Id.* at 636.

[47] *Id.* at 640.

[48] *Id.* at 565.

-11-

to the attention and completing tasks domain for the period thereafter, with special attention to the evaluations in the IEPs for the later period and in the teacher's questionnaire.[49]

## Conclusion

For the reasons stated, substantial evidence supports the finding of the Commissioner that B.C.M. had no disability through December 17, 2010, but not for the period thereafter. Accordingly, the denial of Miller's application is affirmed in part and reversed in part, with the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: September 29, 2014                        s/ William H. Baughman, Jr.
                                                 United States Magistrate Judge

---

[49] *Id.* at 316-17.